Burton **BLENDER** on behalf of himself and all others similarly situated, Plaintiff,

v.

Harper **SIBLEY, Jr.,** et al., Defendants.

Civ. A. No. 74–1178.

United States District Court, E. D. Pennsylvania.

March 21, 1975.

---

David Berger, Philadelphia, Pa., for plaintiff.

Donald A. Scott, Philadelphia, Pa., for First Mortgage Investors.

Alan J. Davis, Philadelphia, Pa., for Arthur Young & Co.

Philip M. Hammett, Philadelphia, Pa., for White, Weld & Co.

## OPINION

DITTER, District Judge.

This case comes before the court on the motion of defendants to transfer the matter to another district for the convenience of parties and witnesses and in the interest of justice. For the reasons expressed herein the motion will be granted.

Plaintiff's complaint alleges violations of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, arising out of the proxy statement and prospectus for the acquisition of Median Mortgage Investors (Median) by First Mortgage Investors (FMI). Defendants have moved, pursuant to 28 U.

S.C. § 1404(a),[1] to transfer this action to the United States District Court for the Southern District of Florida.[2]

On a motion to transfer, a district court is vested with wide discretion, *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir. 1973); *Keck v. Employees' Independent Association,* 387 F.Supp. 241 (E.D.Pa.1974), in weighing all relevant factors to determine if, on balance, the action more conveniently would proceed and the interests of justice would better be served in the transferee court, *Keck v. Employees' Independent Association,* supra; *Fitzgerald v. Central Gulf Steamship Corp.,* 292 F. Supp. 847 (E.D.Pa.1968). The burden rests upon the moving party to establish that a balancing of proper interests weighs strongly in favor of the transfer. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

Although a plaintiff's choice of forum normally is a paramount consideration in any determination of a request to transfer, *Shutte v. Armco Steel Corp.,* supra; *Mitchell v. Farrell Lines, Inc.,* 350 F.Supp. 1325, 1326 (E.D.Pa.1972), far less weight is accorded that factor in a derivative suit or class action, *Koster v. Lumbermen's Mut-Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 833, 91 L.Ed. 1067; *Polin v. Conductron Corp.,* 340 F. Supp. 602, 605 (E.D.Pa.1972).[3]

In applying the statutory criteria of convenience of parties, convenience of witnesses, and the interests of justice, courts have frequently adopted a "center of gravity" rationale. See, e. g., *Firmani v. Clarke,* 325 F.Supp. 689, 692 (D.Del.1971); *Levine v. Financial Programs, Inc.,* 318 F.Supp. 952 (S.D.N.Y. 1969). Among the criteria considered under this approach are: (1) the location of the corporate defendant's principal offices; (2) the residence of the individual defendants; (3) the residence of potential witnesses; (4) the location of pertinent documents and records; (5) the location where the challenged conduct was conceived, executed, and performed; and (6) where the suit is a class action, the residence of members of the alleged class. Application of these criteria to the case at bar leads to the ineluctable conclusion that transfer is required.

FMI is a Massachusetts[4] real estate investment trust with its principal place of business in Miami Beach, Florida. The situation with respect to Median prior to its acquisition by FMI was similar. Although defendants, Arthur Young & Company, and White,

---

1. That section provides:
   For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
   Plaintiff concedes that this suit could have been brought in the Southern District of Florida. See generally *Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043 (3d Cir. 1973).

2. All defendants except White, Weld & Co. Incorporated have specifically moved for transfer. White, Weld did however file a statement consenting to the relief sought by the other defendants.

3. The cases in this Circuit are all but unanimous on this point. See *Goodman v. Fleischmann,* 364 F.Supp. 1172, 1175 (E.D. Pa.1973); *Harris v. American Investment Co.,* 333 F.Supp. 325, 326 (E.D.Pa.1971);

*Firmani v. Clarke,* 325 F.Supp. 689, 691 (D. Del.1971); *Triangle Industries v. Kennecott Copper Corp.,* 325 F.Supp. 150, 152 (E.D. Pa.1971); *Newfield v. Nicholson File Co.,* 210 F.Supp. 796, 798 (E.D.Pa.1962); cf. *Trans-United Industries, Inc. v. Renard Linoleum & Rug Co.,* 212 F.Supp. 373 (E.D.Pa. 1962).
   The sole case in this district cited as an exception to the rule, *Girsh v. Jepson,* 355 F.Supp. 1104 (E.D.Pa.1973), is distinguishable on the basis of Judge Davis' finding that transfer of that action actually would *increase* movant's burden of inconvenience, *id.* at 1107.

4. FMI's Massachusetts contacts are minimal. It has an office staffed by a single employee in Boston where certain records are maintained. FMI has no office in this district, and less than one percent of its outstanding investments are located here.

Weld & Co., Incorporated, maintain offices in Philadelphia, no personnel in these offices were involved in the transaction out of which the complaint arose. There are ten individual defendants; five are residents of Florida and none reside in this district.[5]

The location of potential witnesses militates still further in favor of transfer. The gravamen of plaintiff's complaint concerns certain alleged misrepresentations in the proxy statement and prospectus with respect to the financial conditions of FMI and Median, and the nature of their businesses, loans, and other investments. The individuals possessing the most accurate knowledge about these matters are located almost exclusively in Miami Beach. All but one of FMI's employees are located there, as are, according to one estimate, 75 out of 96 employees of the investment advisor, First Mortgage Advisory Company (FMACo.,), and its predecessors, who would be expected to testify regarding the loan portfolios of FMI and Median.[6] Moreover, of the 13 witnesses FMI and Median may call in this case, six have not been in Pennsylvania during the last two years, and the remainder have spent an average of less than one day per month in this Commonwealth.[7] Production of these witnesses in Philadelphia, as well as posing a major inconvenience to them, potentially could result in substantial disruptions of defendants' businesses. And in a case involving allegations of fraud, where the credibility and demeanor of witnesses may prove critical, defendants ought not be asked to settle for "trial by deposition" rather than to have a ready opportunity to produce live witnesses. See, e. g., *Fogel v. Wolfgang*, 48 F.R.D. 286, 291 (S.D.N.Y. 1969); *Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung*, 250 F.Supp. 744, 756 (S.D.N.Y.1966).

Of course, plaintiff's convenience would be served if transfer were denied. It has not been suggested, however, that plaintiff's testimony would in any event exceed recitation of the circumstances surrounding his receipt of the proxy statement and prospectus.[8]

By far the most convincing factor in favor of transfer is the location in Miami Beach of most if not all of the records and documents relevant in this suit. The business papers of FMI and its investment advisor are located there. Production of these documents in Philadelphia would be burdensome not only because of their volume, but also because many of them are needed for the day to day operations of FMI. The audit workpapers of defendant Arthur Young & Company likewise are located in Miami. These documents, like those belonging to FMI, are in continuous use in connection with ongoing work.[9] Such considerations, although not controlling, are appropriate in evaluating the desirability of a proposed transfer. See, e. g., *Schreiber v. Northwestern Mutual Life Insurance Co.*, 361 F.Supp., 625, 626 (S. D.N.Y.1973); *Polin v. Conductron Corp.*, supra at 606.

Plaintiff contends that the inconvenience occasioned by the location of these

---

5. Of the remaining individual defendants, one each resides in New Jersey, New York, Maryland, the District of Columbia, and Puerto Rico.

6. Affidavit of Dennis P. Coyle, Esq., ¶ 17. Mr. Coyle has been the Secretary of FMI since November, 1973.

   The remaining personnel work several regional offices of FMACo. located throughout the United States, none of which are located in this district.

7. FMI's and Median's Supplemental Answers and Objections to Plaintiff's Venue Interrogatories, No. 21.

8. The argument for retaining the case in this district would be no more persuasive even if class action status already had been designated and it could be demonstrated that other members of the plaintiff class would be called to testify, since only 3.5% of the shares of Median were held of record by Pennsylvania residents.

9. Affidavit of Lester Schner, ¶ 3. Mr. Schner is the managing partner of the Miami office of Arthur Young & Company.

documents in Miami may be ameliorated by his counsel's avowed willingness to travel to Florida for extensive depositions and discovery [10] and the liberal photographic reproduction of documents which will no doubt occur whether the action is maintained here or in Florida. These contentions fail to address the fundamental problem, however. In a complex matter where numerous objections may arise during the course of discovery, the ability of the trial judge, sitting within the district where the original documents are located, to dispose promptly of such questions will serve enormously to expedite the case.

Of the next criteria applied in ascertaining the "center of gravity" of this suit, the situs of the conception and execution of the challenged conduct, little need be said. The proxy statement and prospectus which are the subject of the complaint, as well as the operating statements and news releases issued in connection with the acquisition, were all prepared in Miami Beach. While not determinative in and of themselves, these facts do lend additional weight to movant's argument. See *Firmani v. Clarke,* supra at 692; *Levine v. Financial Programs, Inc.,* supra at 954.

In accordance with the procedure laid down by the Court of Appeals for this Circuit in *McDonnell Douglas Corp. v.*

*Polin,* 429 F.2d 30 (3d Cir. 1970), plaintiff's motion for class action determination [11] has been deferred pending resolution of defendants' motion to transfer. Nevertheless, since both parties have seen fit to discuss the residence of the members of the purported class, I shall also refer to it.

Plaintiff asserts that it is "highly significant" that 42% of the outstanding shares of Median were owned by residents of Pennsylvania, New Jersey and New York. Upon closer analysis, however, it appears that this rather impressive figure is reached largely by virtue of lumping the New York percentage, where large blocks of stock are held by brokerage houses in street name, with that of Pennsylvania. As previously stated, note 9 supra, Pennsylvania residents actually own less than 4% of Median's outstanding shares. In any event, an argument premised on the geographical distribution of shareholders who will not actively take part in the trial is make-weight, and is far outweighed by the needs of the active participants in this litigation. See *Girsh v. Jepson,* 355 F.Supp. 1104, 1106 (E.D.Pa.1973).

Lastly, there are two additional factors which are relevant here: the pendency of a related action in the transferee district and the calendar condition of the transferee court. On November

---

10. Defendant Arthur Young & Company in its brief suggests that in light of plaintiff's counsel's willingness to spend the substantial amount of time in Florida required for discovery, any claim that it would be inconvenient for him to try the case there would seem disingenuous. I express no comment, but note that "[t]he convenience of counsel, as opposed to the parties themselves or their witnesses, is not a factor in deciding a motion for a change of venue." *Triangle Industries, Inc. v. Kennecott Copper Corp.,* 325 F.Supp. 150, 152 (E.D.Pa.1971), citing *Roller Bearing Company of America v. Bearings, Inc.,* 260 F.Supp. 639, 640 (E.D. Pa.1966) ; see *Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043, 1047 (3d Cir. 1973).

11. Plaintiff seeks to maintain this action on behalf of all persons who owned Median stock on August 31, 1973, the record date

for the special meeting of shareholders, and who purchased securities of FMI or received such securities in exchange for their Median securities.

Although, of course, I express no opinion concerning the propriety of class action certification here, it is of more than passing interest that the Court of Appeals for this Circuit has recognized that

. . . since the effectiveness of the securities law may depend in large measure on the application of the class action device "the interests of justice require that in a doubtful case, . . . any error, if there is to be one, should be committed in favor of allowing the class action."

*Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir. 1970), quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968) ; see *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir. 1968).

20, 1974, an action styled *Greenspan v. Boyd et al.*, Civil Action No. 74–1519, was commenced in the United States District Court for the Southern District of Florida. Although there are obvious dissimilarities between *Greenspan* and the case at bar,[12] the complaints overlap enough [13] that even should consolidation prove undesirable, there will at least be much duplication in discovery and proof. The presence of a related case in the transferee forum is a powerful reason to grant a change of venue. See, e. g., *Blanning v. Tisch*, 378 F.Supp. 1058, 1061 (E.D.Pa.1974); *Maxlow v. Leighton*, 325 F.Supp. 913, 915–16 (E.D.Pa.1971). Indeed, Judge Luongo recently held in *Blanning* that while if only the convenience of parties was at issue transfer would have been denied, the pendency of a related action in the transferee court compelled transfer.[14]

Finally, it appears that the condition of the civil docket in the Southern District of Florida is such that this action can be readied for trial as soon, if not more promptly, than in this district.[15] Although not a factor to which great weight need be assigned, *Materials Technology, Inc., v. Circuit Foil Corp.*, 49 F.R.D. 79, 81 (E.D.Pa.1970), the relative conditions of the court calendars in the transferor and transferee districts nevertheless should be considered in ruling on a motion to transfer, *Pontes v. Calmar S. S. Corp.*, 256 F.Supp. 495, 496 (E.D.Pa.1966) (3-judge court). In the case at bar that factor is close to neutral, but probably inclines in favor of transfer.

For the foregoing reasons, defendants' motion to transfer will be granted. An order will issue accordingly.

---

12. The purchases alleged in *Greenspan* occurred in 1971 and 1972, while the exchange controverted in the instant case took place in 1973, for example.

13. For example: (1) the allegations in paragraphs 18(a) and (b) of *Greenspan*, relating to the inadequacy of FMI's reserve for loan losses, are similar to paragraph 18(m) of the *Blender* complaint; (2) the allegations in paragraph 18(e) of *Greenspan*, concerning foreclosure and sale by FMI, duplicate paragraphs 18(a), (b) and (c) of the *Blender* complaint; (3) the allegations in paragraph 18(g) of *Greenspan*, concerning the Kassuba loans, resemble paragraphs 18(o) and (p) of the complaint in *Blender*; and (4) the allegations in paragraph 18(h) in *Greenspan*, regarding commitment fees, relate to paragraph 18(h) of the *Blender* complaint.

14. That the present action was instituted prior to *Greenspan v. Boyd* is of no import. As the court observed in *Firmani v. Clarke*, supra at 693, "'[w]inning the race to the courthouse' is not one of the standards to be applied when considering a motion to transfer under § 1404(a)."

15. Mr. Coyle in his affidavit states that currently the average interval between the joining of issue and trial in civil cases in the Southern District of Florida is slightly less than six months.