589 F.2d 330
 Fed. Sec. L. Rep. P 96,736
Frank E. FITZSIMMONS, William Presser, Joseph W. Morgan, Roy
L. Williams, Robert Holmes, Donald Peters, Frank H. Ranney,
Walter W. Teague, Albert D. Matheson, Thomas J. Duffey, John
F. Spickman, Herman A. Lueking, Jr., J. A. Sheetz, William
J. Kennedy, Bernard S. Goldfarb and A. G. Massa, as Trustees
of the Central States, Southeast and Southwest Areas Pension
Fund, Plaintiffs-Appellants,
v.
Gerald G. BARTON, Defendant-Appellee.
 No. 78-1021.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 24, 1978.
Decided Jan. 5, 1979.
 
 Randall Spencer, Chicago, Ill., for plaintiffs-appellants.
 Kenneth N. McKinney, Oklahoma City, Okl., for defendant-appellee.
 Before SPRECHER, TONE and BAUER, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 This case arises from the district court's dismissal of one of the defendants in a federal securities fraud action for lack of In personam jurisdiction. The court concluded that the defendant did not have sufficient contacts with the State of Illinois to satisfy the Illinois Long Arm Statute, Ill.Rev.Stat., ch. 110, § 17 (1975), thus invalidating service effected on defendant in Oklahoma. We hold that the district court's application to a federal securities fraud action of jurisdictional principles appropriate for diversity actions was error, and we therefore reverse the judgment of the district court.
 
 
 2
 * The complaint filed in this case alleged that certain representations made by the defendants in an exchange of notes and collateralized securities violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1976) and Rule 10b-5, 17 C.F.R. § 240.10b-5 (1978). This exchange occurred during a restructuring of indebtedness, guaranteed by defendant and owed to the plaintiffs.
 
 
 3
 Only a brief sketch of the financial relations among the parties here is necessary to understand the course of the proceedings below. Barton, the defendant here, was the president and chief executive officer of the United Founders Life Insurance Company. United Founders at one time received one half of the insurance business generated by the Teamsters' Pension Fund, of which the plaintiffs were once trustees. In 1973 the Fund began to consider the possibility of self-insuring. If that were to happen, there was some question as to whether United Founders could meet its debts to the Reis Corporation, of which the defendant Barton was also a director and officer. In turn, there was concern that if Reis did not receive payments from United Founders, Reis would be unable to meet its obligations to the Fund. Reis's obligations to the Fund were evidenced by more than seven million dollars worth of promissory notes guaranteed by a corporation wholly owned and controlled by Barton. Although the Fund ultimately decided that it would not self-insure, it did decide to alter terms of its agreements with its insurers. As a result, United Founders' profits decreased, thereby necessitating the restructuring of the Reis-Fund indebtedness. It was during this restructuring transaction that defendant Barton and other officers of Founders and Reis allegedly made the fraudulent representations challenged in this action.
 
 
 4
 After the plaintiffs filed their action in the Northern District of Illinois, defendant Barton moved that the complaint be dismissed as to him for lack of proper venue and In personam jurisdiction. The district court granted his motion finding that it lacked In personam jurisdiction. In reaching this conclusion the district court found that insufficient contacts existed between Barton and Illinois to justify the application of the Illinois Long Arm Statute, Ill.Rev.Stat., ch. 110, § 17 (1975). The only contacts between Barton and Illinois consisted of nine different business trips to Illinois. The district court found, however, that these trips were for purposes unrelated to the debt restructuring transaction. These trips were made to discuss the self-insurance proposal of the Fund. Barton maintains that he possessed a wealth of "background information" relating to the insurance relationship between the Fund and Founders and that therefore he could play a valuable consulting role to the Fund in its consideration of the self-insurance proposal. Further, the district court held that, although the self-insurance meetings laid the foundation for the ultimate restructuring transaction, "the Illinois Long Arm Statute and due process require that the contact be more than the 'first step on the road. . . .' "
 
 II
 
 5
 The district court apparently dismissed Barton from this suit in reliance on the part of Rule 4(e) of the Federal Rules of Civil Procedure requiring that if no statute of the United States provides for the manner of service, service is governed by the law of the state in which the district court sits. Reference to Illinois law, however, was inappropriate in this case. Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa (1976), was alleged as an alternative basis of jurisdiction in the complaint, but apparently not emphasized in the arguments before the District Court. That section provides:
 
 
 6
 Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, . . . may be brought in any such district (wherein any act or transaction constituting the violation occurred) or in the district wherein the defendant is found or is an inhabitant or transacts business, And process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.
 
 
 7
 (Emphasis supplied). Given the existence of this Congressional authorization of nationwide service of process, Rule 4(e) provides that this method of service is sufficient. Accordingly, the only question before us is whether the Due Process Clause imposes any restraints on this nationwide service.
 
 III
 
 8
 The most extensive recent discussion of the restraints which Due Process imposes on jurisdictional power is Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). That decision rejected the notion that Due Process limitations on jurisdiction arose from considerations of territorial sovereignty and held instead that Due Process limitations reflected "traditional notions of fair play and substantial justice." Accordingly the Court held that a state court's exercise of Quasi in rem jurisdiction would comport with the Due Process Clause only if the "minimum contacts" test of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), were met. Although Shaffer and International Shoe speak directly only of State court jurisdiction, the broad articulation of a fairness standard (in opposition to a territorial standard) in both opinions requires a further inquiry to determine what, if any, restrictions Due Process imposes on federal jurisdiction over persons.
 
 
 9
 In Shaffer the Court, after deciding that a "fairness" standard should be applied to exercises of Quasi in rem jurisdiction, then addressed the question whether the record revealed minimum contacts with the state which could serve as a fair basis for the exercise of Quasi in rem jurisdiction. The Court concluded that such contacts did not exist. In reaching the conclusion the Court carefully delineated and discussed the various state interests which arose from the contacts present and considered whether the interests could fairly justify the exercise of jurisdiction over a non-resident defendant. For example, the Court concluded that the fact that the defendants took positions as officers in a Delaware corporation, although it invoked the "interest of Delaware in supervising the management of a Delaware corporation," did not serve as a fair basis for jurisdiction since Delaware had not in fact asserted such an interest in the sequestration statute that served as a basis of jurisdiction.[1]
 
 
 10
 It is clear, therefore, that the "fairness" standard imposed by Shaffer relates to the fairness of the exercise of power by a particular sovereign, not the fairness of imposing the burdens of litigating in a distant forum. Applying this standard of fairness, it is clear that this instance of personal service satisfies Due Process. Here the sovereign is the United States, and there can be no question but that the defendant, a resident citizen of the United States, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court.[2]
 
 
 11
 This analysis and conclusion has been well established since United States v. Union Pacific R. R., 98 U.S. 569, 25 L.Ed. 143 (1878). There the Supreme Court, in upholding the In personam jurisdiction of a circuit court in a federal action against parties residing outside the state in which the circuit court sat, noted:
 
 
 12
 The jurisdiction of the Supreme Court and the Court of Claims is not confined by geographical boundaries. Each of them, having by the law of its organization jurisdiction of the subject matter of a suit, and of the parties thereto, can, sitting at Washington, exercise its power by appropriate process, served anywhere within the limits of the territory over which the federal government exercises dominion.
 
 
 13
 There is, therefore, nothing in the Constitution which forbids Congress to enact that, as to a class of cases or a case of special character, a circuit court any circuit court in which the suit may be brought, shall, by process served anywhere in the United States, have the power to bring before it all the parties necessary to its decision.
 
 
 14
 Id. at 603-04.[3] This conclusion has been specifically applied to uphold the validity of nationwide service of process under § 27 of the 1934 Securities Exchange Act.[4] In Mariash v. Morrill, 496 F.2d 1138 (2d Cir. 1974), the Second Circuit upheld under § 27 the jurisdiction of a federal district court in New York over defendants served in Massachusetts stating:
 
 
 15
 (W)here, as here, the defendants reside within the territorial boundaries of the United States, the "minimal contacts", required to justify the federal government's exercise of power over them, are present. Indeed, the "minimal contacts" principle does not, in our view, seem particularly relevant in evaluating the constitutionality of in personam jurisdiction based on nationwide, but Not extraterritorial, service of process. It is only the latter, quite simply, which even raises a question of the forum's power to assert control over the defendant.
 
 
 16
 Id. at 1143 (emphasis in original).
 
 
 17
 The defendant asserts that an additional standard of fairness should be applied to determine whether federal jurisdiction arising from nationwide service of process comports with the Due Process Clause, relying solely on the district court decision in Oxford First Corp. v. PNC Liquidating Corp., 372 F.Supp. 191 (E.D.Pa.1974). In that case a Pennsylvania district court dismissed a challenge to its In personam jurisdiction raised by a defendant served in California in a securities fraud action. In upholding its own jurisdiction, however, the court applied a "fairness" test to determine whether extra-district service of process under Section 27 complied with the Due Process Clause. The court set out five factors as components of this "fairness" test: (1) the extent of the defendant's contacts with the district in which the action was brought; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than the place of his residence; (3) judicial economy; (4) the probable situs of discovery; and (5) the nature of the regulated activity at issue and its impact outside defendant's state of residence or business.
 
 
 18
 We decline, however, to adopt these factors as a test of whether an instance of personal jurisdiction under Section 27 complies with the Due Process Clause. The "fairness" measured by these factors does not relate to the fairness of the exercise of power by a particular sovereign the central concern of Shaffer and its predecessors but instead to the fairness of imposing the burdens of litigation in a particular forum. As such, these factors are more appropriately used in applying 28 U.S.C. § 1404(a), which embodies the non-jurisdictional doctrine of Forum non conveniens,[5] and we therefore decline to import them into determination of the constitutionality of exercises of personal jurisdiction.
 
 
 19
 Of course on remand to the district court the defendant remains free to raise any such consideration of fairness in an argument that the case should be transferred under Section 1404(a).[6] Additionally, some of the arguments advanced here may also be relevant to a determination of whether venue is properly lodged in the Northern District of Illinois.[7] These arguments, however, are not appropriately directed towards the constitutionality of jurisdiction, and accordingly the judgment of the district court is
 
 
 20
 REVERSED AND REMANDED.
 
 
 
 [1]
 Id. at 213-14, 97 S.Ct. at 2585. The Court reasoned that the interest in controlling corporate fiduciaries was not expressed by the statute since jurisdiction was premised under the statute on the presence of property in Delaware and it was not necessarily true that all fiduciaries of Delaware corporations would have property in Delaware
 
 
 [2]
 The defendant cites our decision in Honeywell, Inc. v. Metz Apparatewerke, 509 F.2d 1137 (7th Cir. 1975), in opposition to this principle. Although that decision considered the contacts of the defendant in a federal patent infringement action with the state in which the action was brought and concluded that such contacts existed, there is no congressional authorization for nationwide service in the Patent Act such as is provided by § 27 of the 1934 Act. The only provision mentioning service of process, 35 U.S.C. § 293 (1970), establishes nationwide service only with respect to "designated agents" of foreign patentees. Since there is no indication that there was any such designated agent in Honeywell, the court may have been bound to apply the Illinois Long Arm Statute. Fed.R.Civ.P. 4(e). Further, the court was careful to point out that since it found "minimum contacts" of the defendant with Illinois it was not necessary to decide whether "minimum contacts" with the United States would be sufficient for due process purposes. Id. at 1143 n.2. Deferring this issue was particularly appropriate in a case, which unlike the one before us, did not involve any direct consideration of Congressional authorization of nationwide service of process
 
 
 [3]
 This proposition has been frequently reiterated by the Supreme Court. See Mississippi Publishing Co. v. Murphree, 326 U.S. 438, 442, 66 S.Ct. 242, 90 L.Ed. 185 (1946); Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119 (1925)
 
 
 [4]
 Mariash v. Morrill, 496 F.2d 1138 (2d Cir. 1974); International Controls Corp. v. Vesco, 490 F.2d 1334 (2d Cir. 1974), Cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978) (by implication); Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1340 (2d Cir. 1972)
 The defendant's citation of Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir.), Cert. denied, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), in opposition to this position is completely mistaken. The passages cited by defendant, Id. at 998-1000, relating to minimum contacts of a defendant, refer to a Canadian defendant served in Canada. Service beyond the bounds of the territorial United States obviously raises questions as to the contact of the defendant with the United States, questions that are absent when a United States citizen is served within the country.
 
 
 [5]
 Several of these factors are explicitly set out by Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), as factors to be considered in applying the doctrine of Forum non conveniens :
 Important considerations are the relative ease of access to sources of proof . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. . . .
 Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. . . . In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.
 Id. at 508-09, 67 S.Ct. at 843.
 See also 7 Rut.-Cam.L.J. 158 (1975), which specifically criticized Oxford First for using these factors to test jurisdiction rather than apply Forum non conveniens. Oxford First considered this argument and rejected it on the ground that it avoids the issue of constitutional restrictions. 372 F.Supp. at 203 n.24. However, if these factors are of constitutional significance, an issue that we do not decide, we do not understand why they would be any less so because applied under the rubric of Forum non conveniens instead of personal jurisdiction.
 
 
 [6]
 We do note, however, that the record demonstrates sufficient contact with the forum to preclude transfer on the sole basis of insufficient contacts. The record indicates, by virtue of Barton's nine separate trips to Chicago to provide background information for the self-insurance proposal and in one case even to attend a Christmas party (Joint Appendix at 70), that Barton had extensive contact with the site of plaintiff's chosen forum and that travel to Chicago poses no undue burdens upon Mr. Barton. The fact that these trips were not directly related to the litigated transaction does not bear upon the convenience considerations posed by litigation in the Northern District of Illinois
 
 
 [7]
 According to the venue provisions of § 27, actions under the 1934 Act may be brought in any district wherein "any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa (1976)