John D. CLEMENT Jr., Charles L.
Schreeder III, Kenneth R. Cantrell, Das
A. Borden, Jerry W. Borden, Plaintiffs,

v.

John PEHAR, Robert W. Spencer, Myriad
Mineral Resources, Inc., Lloyd G.
Frost, Lawrence Williams, Charles Nelson, Defendants.

Civ. A. No. C82–1677A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 8, 1983.

John A. Christy, Schreeder, Wheeler & Flint, Atlanta, Ga., for plaintiffs.

Mary G. Whitaker, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., Thomas A. Varlan, Sutherland, Asbill & Brennan, Atlanta, Ga., Paul J. Kelly, Marina Del Rey, Cal., Richard Oetting, Voegelin & Barton, Los Angeles, Cal., Thomas S. Carlock, Dennis, Corry, Carlock & Williams, Atlanta, Ga., for defendants.

## ORDER

SHOOB, District Judge.

Plaintiffs initiated this action on August 10, 1982, alleging that in a 1980 transaction

involving the sale to them of interests in a Nevada gold and silver mining venture, defendants violated the Securities Act of 1933 and the Securities Exchange Act of 1934, 15 U.S.C. §§ 77a, *et seq.*, the Racketeer Influenced and Corrupt Organizations ("RICO") provisions of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961, *et seq.*, various state securities laws, and common law provisions against fraud.

In August 1980 each plaintiff purchased various percentages of working mineral interests in a mining venture known as Randall Mining Associates ("Randall"). Randall had been formed by defendants John Pehar and Robert W. Spencer as a means of financing the exploitation of certain mining claims held in Nevada by defendant Myriad Mineral Resources, Inc. ("Myriad"), a corporation of which they were the sole officers and shareholders. Plaintiffs learned of the opportunity to invest in Randall through a confidential memorandum or "offering circular" that was allegedly prepared by defendants Pehar and Spencer with the assistance of defendant Lawrence Williams, an attorney, defendant Charles Nelson, a financial planner, and defendant Lloyd Frost, a geologist.

Each of the plaintiffs in this action is a resident of the state of Alabama, except for Charles L. Schreeder III, who is an attorney residing in Atlanta, Georgia, and whose law firm is representing plaintiffs. Each of the responding defendants, on the other hand, is a resident of the state of California, except for Myriad, which is a Nevada corporation but maintains its corporate offices in California. Defendants Pehar, Spencer, Myriad, and Williams have all moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) on grounds of lack of jurisdiction over the person and improper venue, or, in the alternative, to transfer the action to the Central District of California pursuant to either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).[1]

## I. *Personal Jurisdiction*

Defendants' argument with respect to personal jurisdiction relies entirely on a "minimum contacts" analysis derived from *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. This argument, however, misconceives the basis of this Court's jurisdiction over defendants in the instant action. Jurisdiction here is founded on specific statutory provisions authorizing nationwide service of process in federal securities and RICO cases. *See* 15 U.S.C. §§ 77v(a), 78aa and 18 U.S.C. § 1965(d). Service of process on defendants in California was therefore authorized under Fed.R. Civ.P. 4(e)'s provision for extraterritorial service of process "[w]henever a statute of the United States or an order of court thereunder provides." Where such nationwide service of process is authorized, a federal district court's jurisdiction is "coextensive with the boundaries of the United States, [and] due process requires only that a defendant in a federal suit have minimum contacts with the United States, 'the sovereign that has created the court.'" *FTC v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir. Unit A 1981) (quoting *Stafford v. Briggs*, 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Stewart, J., dissenting)).

In *Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir.1979), *cited with approval, F.T.C. v. Jim Walter Corp., supra,* 651 F.2d at 256, the Seventh Circuit applied this principle to a case arising under the Securities Exchange Act of 1934. The court analyzed the due process restraints imposed on a court's jurisdictional power in *International Shoe, supra,* and *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and concluded that the "fairness" standard articulated in those cases "relates to the fairness of the exercise of power by a particular sovereign, not the fairness of imposing the burdens of litigating in a dis-

---

**1.** Defendant Nelson has raised the same defenses in his answer. *See* Answer to First Restated and Amended Complaint, filed October 18, 1982, ¶¶ 4, 9. Defendant Frost, who has not filed an answer or made any appearance in this action, is apparently deceased. *Id.* ¶ 8.

tant forum." *Fitzsimmons,* 589 F.2d at 333. Accordingly, where a defendant is a resident citizen of the United States, "there can be no question but that [he] ... has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court." *Id.* (Footnote omitted.)

■ Defendants here, as did the defendant in *Fitzsimmons, supra,* argue that an additional standard of fairness should be applied to determine whether federal jurisdiction arising from nationwide service of process comports with the due process clause. They rely on *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191 (E.D.Pa.1974), where the district court, in upholding its own jurisdiction over a nonresident defendant in a securities fraud action, applied a "fairness" test to determine whether extra-district service of process under 15 U.S.C. § 78aa satisfied due process requirements.[2] As the Fifth Circuit has noted, however, the *Oxford* approach "mistakenly relies on *Lone Star [Package Car Co. v. Baltimore & Ohio R.R.,* 212 F.2d 147 (5th Cir.1954)] and misconstrues the *International Shoe* line of cases." *Jim Walter, supra,* 651 F.2d at 256 n. 9. "The 'fairness' measured by ... [the *Oxford*] factors does not relate to the fairness of the exercise of power by a particular sovereign ... but instead to the fairness of imposing the burdens of litigation in a particular forum." *Fitzsimmons, supra,* 589 F.2d at 334. As such, they are more appropriately applied in determining whether venue is properly laid in a particular district, and if so, whether a transfer is nonetheless appropriate under 28 U.S.C. § 1404(a). *Id.* at 334–35.

■ Accordingly, because it is not disputed that defendants are citizens of the United States and were properly served with process within the United States, the Court concludes that it may constitutionally exercise jurisdiction over them.

## II. *Venue*

The threshold question is whether venue is proper in this district. If venue is proper, then the Court might nevertheless determine that transfer is appropriate "[f]or the convenience of parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). If venue is improper, then the Court must determine whether, "in the interest of justice," the case should be transferred rather than dismissed. 28 U.S.C. § 1406(a).

■ The parties agree that if venue in this district is proper under the broad provisions of section 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78aa, then it is also proper for the other related violations of law that are alleged, *see In re Penn Central Securities Litigation,* 338 F.Supp. 438 (E.D.Pa.1972), excepting the RICO claims, which must satisfy the independent venue requirements of 18 U.S.C. § 1965(a). *See Farmers Bank of the State of Delaware v. Bell Mortgage Corp.,* 452 F.Supp. 1278, 1281 n. 7 (D.Del. 1978).

Venue is proper under 15 U.S.C. § 78aa in any district where (1) any act or transaction constituting the violation occurred, or where the defendant (2) is found, (3) is an inhabitant, or (4) transacts business. Since it is undisputed that none of the defendants is found, is an inhabitant, or transacts business in this district, the only possible basis under section 78aa for laying venue in this district is that some "act or transaction constituting the violation" occurred here. Plaintiffs contend that this basis for venue is present because (1) plaintiff Schreeder purchased his interest in Randall in this district, and (2) defendants, by both tele-

---

**2.** The court set out five factors as components of this "fairness" test: (1) the extent of the defendant's contacts with the place where the action was brought; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business; (3) judicial economy; (4) the probable situs of discovery; and (5) the nature of the regulated activity in question and its impact outside defendant's state of residence or business. 372 F.Supp. at 203–04.

phone and mail, transmitted false and misleading statements into this district.

The Court turns first to plaintiffs' second contention. Plaintiffs argue that defendants sent false and misleading statements into this district by mail (1) when defendant Spencer sent approximately one dozen Randall offering circulars to a personal friend in Birmingham, Alabama, Mr. Robert Underwood, who in turn mailed one of the circulars to plaintiff Schreeder in Atlanta at his request; and (2) when defendant Spencer, approximately two months after plaintiffs' purchase of their interests in Randall, mailed to plaintiff Schreeder in Atlanta a confirmation of his investment. Such statements were also allegedly transmitted by telephone when, prior to his decision to purchase an interest in Randall, plaintiff Schreeder made separate calls from Atlanta to defendants Pehar, Williams, and Frost, who discussed various aspects of the proposed mining operation and confirmed statements made in the offering circular.

There are some factual disputes regarding these mailings and telephone calls. Plaintiff Schreeder has filed an affidavit stating that he first learned of the Randall investment opportunity from one of his clients, co-plaintiff Das A. Borden, who had in turn learned of Randall from Mr. Underwood, his personal financial planner. According to his affidavit, Schreeder then telephoned Mr. Underwood, who informed him that he had received offering circulars from the organizers of Randall describing the investment in greater detail. After Schreeder expressed an interest in the investment, Underwood offered to send, and subsequently did send, a copy of the circular by mail to Schreeder's office in Atlanta. Schreeder Affidavit ¶¶ 3–5.

In his deposition testimony, however, Mr. Underwood stated that he did not recall ever discussing Randall with Mr. Schreeder prior to an August 1980 meeting with all the plaintiffs in Muscle Shoals, Alabama. Underwood deposition at 85. Nor did Mr. Underwood recall ever offering to send, or in fact sending, Mr. Schreeder a copy of the Randall offering circular. Underwood deposition at 31, 61. Rather, according to Mr. Underwood, he first met Mr. Schreeder and learned of his interest in Randall at the meeting in Muscle Shoals, where he also first provided plaintiffs with offering circulars and the necessary investment documents. Underwood deposition at 28–30.

With regard to the alleged telephone conversations, plaintiff Schreeder's affidavit states that on August 16, 1980, he telephoned defendant Williams from his office in Atlanta, and that during their conversation Mr. Williams

> reaffirmed his tax opinion to me and also stated that the capitalization of the mining partnership was adequate to insure its viability. He also stated and represented to me that Randall Mining Associates was a good investment because the ore was very millable and that other mining operations organized by Messrs. Spencer and Pehar had been successful.

Schreeder affidavit ¶ 7.

Then, on August 18, 1980, still before executing any documents to purchase his interest in Randall, plaintiff Schreeder attests that he spoke with defendant Frost, who had prepared the geological opinion contained in the offering circular. In that conversation,

> Mr. Frost confirmed to me the findings in his geological report and stated to me that "the geological setting is ideal." In response to a question about the risks involved in this investment, he advised me that the greatest risk was in "metal prices and governmental restrictions" and that the contract miner which had been contracted with to mine the ore for the investors had substantial experience in the industry and was dependable.

Schreeder affidavit ¶ 8.

Furthermore, plaintiff Schreeder, according to his affidavit, also telephoned defendant Pehar some time between August 16 and 18, 1980, and was told by him that Randall would employ the preferable "milling," as opposed to a "heap leaching," technique for mining ore. Mr. Pehar also confirmed other statements that had been

made in the offering circular. Schreeder affidavit ¶ 9.

Finally, Mr. Schreeder attests that, relying on the statements of defendants during these telephone conversations, as well as those made in the offering circular, he executed all the necessary investment documents, drew a check in the requisite amount, and then forwarded these items to Mr. Underwood in Birmingham. Thereafter, on October 17, 1980, he received written confirmation from defendant Spencer that the documents had been received and his investment accepted. Schreeder affidavit ¶¶ 10–11.

Both defendants Pehar and Williams have submitted sworn declarations stating that they have no recollection of any conversations with Mr. Schreeder during August 1980 or any other time prior to his investing in Randall. Pehar declaration ¶ 16; Williams supplemental declaration ¶¶ 2–3. However, they do not affirmatively deny that such conversations took place. Moreover, plaintiff Schreeder has filed a supplemental affidavit confirming his previous account of the telephone conversations, including telephone records indicating that he did make calls to defendant Williams and others in California between August 16 and 18, 1980. Schreeder supplemental affidavit ¶¶ 3–6 and Exhibit A. Mr. Schreeder has also submitted copies of his time diary indicating that, contrary to Mr. Underwood's recollection, the meeting in Muscle Shoals, Alabama, between plaintiffs and Mr. Underwood took place on August 21, 1980, three days *after* he (Schreeder) had executed the documents to purchase an interest in Randall. Schreeder supplemental affidavit ¶¶ 7–8 and Exhibit B.

Since, therefore, plaintiff Schreeder's account of the mailings and telephone calls is not directly contradicted by defendants or Mr. Underwood and is supported by some evidence submitted by plaintiffs, the Court will assume, for the purpose of deciding the presently pending motions, that Mr. Underwood did mail an offering circular to Mr. Schreeder in Atlanta at Mr. Schreeder's request, and that defendants Pehar, Williams, and Frost did receive telephone calls from Mr. Schreeder prior to his decision to invest in Randall, and that they did make the statements attributed to them in Mr. Schreeder's affidavit. Having made this assumption, the Court must consider whether these facts constitute an adequate basis for laying venue in this district.

The parties agree that the controlling test for determining whether "any act or transaction constituting the violation" occurred within this district is set forth in *Hilgeman v. National Insurance Company of America,* 547 F.2d 298, 301 (5th Cir.1977):

> The "act" contemplated by the statute need not be crucial, nor must "the fraudulent scheme be hatched in the forum district." *Hooper v. Mountain States Securities Corporation,* 282 F.2d 195, 204 (CA5, 1960). But, as we pointed out in *Hooper,* the jurisdictional act cannot be trivial; it must be "of material importance to the consummation of the scheme." *Id.* at 205.

This test is generally interpreted to require some action by the defendants that "reaches into" the forum district to obtain investors for the fraudulent scheme. *See, e.g., Stern v. Gobeloff,* 332 F.Supp. 909, 911 (D.Md.1971) ("Where an offer to sell securities is made by telephone by an offeror in one federal district and accepted by an offeree in another, part of the 'act or transaction constituting the violation' occurs in each district, and venue may be laid in either"); *Zorn v. Anderson,* 263 F.Supp. 745, 748 (S.D.N.Y.1966) ("[P]roxies sent into this district by interstate mail, with the alleged purpose of securing approval of the contracts, are adequate to sustain venue").

Defendants argue, however, that the mailing of an offering circular into this district by Mr. Underwood and phone calls made by Mr. Schreeder to defendants from this district do not satisfy the *Hilgeman* test, because these communications were not *initiated* by defendants. Nevertheless, in the one case this Court has found directly addressing such a situation, this factor was not found to be determinative.

In *Lehman Brothers Kuhn Loeb v. Lawrence,* [1981–1982 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 98,314 (S.D.N.Y.1981), plaintiff, a corporation engaged in the business of securities brokerage, brought suit in the Southern District of New York against an individual residing in California alleging, *inter alia,* violation of § 10(b) of the Securities Exchange Act of 1934. In determining whether venue was proper under section 27 of the Act, 15 U.S.C. § 78aa, the court assumed the truth of defendant's claim that the only contact he had had with plaintiff or New York was an unsolicited telephone call from one of plaintiff's salesmen recommending that he purchase certain securities. *Id.* at pp. 91,965–91,966. Although defendant was thus assumed not to have initiated any communications with the forum district, the court still found that defendant's "use of an instrumentality of commerce in connection with the order of stock, with the fraudulent intent not to pay for the same, is sufficient to lay venue in this district." *Id.* at p. 91,966; *see also id.* n. 14 and cases cited therein.

In support of their proposed "initiation" requirement, defendants cite *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In that case the Supreme Court held that Florida lacked personal jurisdiction over a Delaware trustee because it had not purposefully availed itself of the benefits of Florida jurisdiction:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.,* 357 U.S. at 253, 78 S.Ct. at 1239–1240. The *Hanson* case, however, did not involve a question of venue but dealt with the constitutional restraints imposed by due process on a state's exercise of *in personam* jurisdiction over a non-resident defendant.

■ Defendants thus seek to import the constitutional constraints of due process into the determination of proper venue. However, the Fifth Circuit in *Jim Walter, supra,* 651 F.2d at 257, rejected defendant's attempt "to create a novel 'minimum contacts' doctrine for venue, constitutionalizing the 'forum non conveniens' doctrine." The Constitution imposes constraints on the exercise of personal jurisdiction but not on the location of permissible venues: "When minimum contacts exist with the relevant sovereign, due process no longer protects a defendant from distant litigation because the location of permissible venues is a matter of sovereign prerogative." [3] *Id.* The Court will therefore not apply *Hanson's* "purposeful availment" test to the question of proper venue.

■ Following the court in *Lehman Brothers, supra,* this Court concludes that it is not necessary for the purpose of establishing venue under 15 U.S.C. § 78aa that defendants have initiated the interstate communications on which venue is premised. In the instant case, although defendants Pehar, Williams, and Frost did not initiate any telephone calls into this district, they did, after receiving such calls, proceed to use this instrument of interstate communication to transmit allegedly false and misleading representations into this district. In this Court's view, this is sufficient under the liberal provisions of 15 U.S.C. § 78aa to lay venue in this district.[4] Having determined that venue is proper on this ground, the Court need not consider whether Mr. Underwood's mailing of an

---

**3.** *But cf. Fitzsimmons, supra,* 589 F.2d at 334 n. 5: "[I]f these ["fairness"] factors are of constitutional significance, an issue that we do not decide, we do not understand why they would be any less so because applied under the rubric of *forum non conveniens* instead of personal jurisdiction."

**4.** Although only defendants Pehar, Williams, and Frost transmitted statements by telephone into this district, venue is also proper as to their co-defendants under the "co-conspirator theory." *Hilgeman, supra,* 547 F.2d at 302 & n. 12.

offering circular into this district also forms a basis for laying venue here, nor need the Court address plaintiffs' second contention that venue is also proper because the sale of Mr. Schreeder's interest took place here.

■ However, the Court must still determine whether venue is proper in this district as to the RICO count in plaintiff's complaint, which is governed by RICO's separate venue provision in 18 U.S.C. § 1965(a). That section provides: "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."

It is undisputed that none of the defendants resides, is found, or has an agent in this district. Moreover, the minimal contacts of defendants with this district in connection with plaintiff Schreeder's purchase of an interest in Randall are not sufficient to constitute the transaction of their affairs within this district. *See King v. Vesco*, 342 F.Supp. 120 (N.D.Cal.1972). Accordingly, there is no specific grant of venue for plaintiffs' RICO claims to be found in section 1965(a).[5]

■ Nevertheless, at least two courts have held that the venue provision found in 18 U.S.C. § 1965(a) was not intended to be exclusive but rather was meant to liberalize the existing venue provisions. *Van Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125, 1133 n. 6 (D.Mass.1982); *Farmer's Bank of the State of Delaware v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1280–81 (D.Del.1978). Therefore, where venue is improper under § 1965(a), the court should inquire whether the action can be maintained under the general venue statute, 28 U.S.C. § 1391(b), which provides that venue is proper either

where all defendants reside or where the claim arose.

In determining where a claim arose for venue purposes, courts generally apply a "weight of the contacts" test, which holds that venue will lie "in any district in which a substantial part of the acts, events, or omissions occurred that gave rise to the claim for relief." *Commercial Lighting Products v. United States District Court*, 537 F.2d 1078, 1080 (9th Cir.1976). At best, in the instant case only those acts, events, or omissions relating to plaintiff Schreeder's claims might be said to have occurred in this district. The more substantial part of the acts on which plaintiff's RICO count is predicated, *i.e.*, those relating to the four Alabama plaintiffs, clearly did not occur in this district. Accordingly, the Court concludes that venue as to plaintiffs' RICO claims also is not proper in this district under 28 U.S.C. § 1391(b). The RICO count of plaintiffs' complaint must therefore be dismissed or, "if it be in the interest of justice," transferred to another district where it could have been brought. 28 U.S.C. § 1406(a).

Since the Court determines below that this entire action should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a), the RICO count need not be dismissed but may be transferred along with the rest of the action, it being clear that the Central District of California is an appropriate forum under 18 U.S.C. § 1965(a).

### III. *Transfer*

■ Having determined that, with the exception of plaintiffs' RICO claims, venue is proper in this district, the Court turns to defendants' motion to transfer this action pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of

---

**5.** Section 1965(b) permits the Court to require other parties residing elsewhere to be brought before it if "it is shown that the ends of justice require." Plaintiffs contend that, at the very least, venue in this district is proper as to defendants Pehar, Williams, and Frost—apparently relying on plaintiff Schreeder's telephone

conversations with these defendants—and that the Court therefore has the authority to bring the other defendants before it pursuant to section 1965(b). Since, however, venue is in fact improper as to *all* defendants under section 1965(a), subsection (b) is simply not applicable here.

parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

As a threshold matter, it is clear that the Central District of California, the forum which defendants seek, is a district where this action "might have been brought." Each of the individual defendants is a resident of that district, except Mr. Frost, who is apparently deceased. Myriad, the corporate defendant, although incorporated in Nevada, maintains its corporate offices and all of its books and records in the Central District of California. Hence it cannot be doubted that jurisdiction and venue would be proper as to all defendants in the Central District of California, and the Court must therefore consider whether a transfer to that district is appropriate.

Plaintiffs' choice of forum is entitled to some deference from a court considering a motion to transfer. Accordingly, the burden of proof is on the movant to demonstrate why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966). As this Court has previously stated:

> The movant has the burden of making a strong case for transfer and if the transfer would merely shift inconvenience from one party to the other, or if the balance of all factors is but slightly in favor of the movant, plaintiff's choice of forum should not be disturbed and transfer should be denied.

*Grey v. Continental Marketing Associates, Inc.*, 315 F.Supp. 826, 831 (N.D.Ga. 1970).

In determining whether a movant has met his burden and a transfer is appropriate, courts have considered a variety of factors. *See generally* Annot., 1 A.L.R. Fed. 15 (1969). Defendants have cited two cases involving alleged violations of federal securities laws, which set forth general criteria to be considered on a motion to transfer under section 1404(a), and which the Court believes provide a good starting point for its analysis in the instant case. In *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967), the court noted the following factors derived from the common law doctrine of forum non conveniens:

> (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

In *Blender v. Sibley*, 396 F.Supp. 300, 302 (E.D.Pa.1975), the district court set out the criteria considered under the frequently adopted "center of gravity" rationale:

> (1) the location of the corporate defendant's principal offices; (2) the residence of the individual defendants; (3) the residence of potential witnesses; (4) the location of pertinent documents and records; (5) the location where the challenged conduct was conceived, executed, and performed; and (6) where the suit is a class action, the residence of members of the alleged class.

As set out below, the Court believes that a majority of the factors enumerated by both the *Schneider* and the *Blender* courts weighs substantially in favor of a transfer of the instant case to the Central District of California.

First of all, defendants correctly point out that all prospective witnesses, except for plaintiffs themselves and Mr. Underwood, are residents of either California or Nevada. These include the California attorneys who reviewed the tax aspects of the Randall investment scheme as well as officials of the Reno, Nevada, office of the Internal Revenue Service who were responsible for a recent audit of Myriad, the corporate defendant. None of these potential witnesses is subject to the compulsory process of this Court, and although Nevada residents could not be compelled to testify

in California, they would undoubtedly be more willing to appear voluntarily in California than in Georgia. The cost of obtaining such willing witnesses would also be substantially less in California.

Second, while California is clearly the most convenient forum for *all* defendants, four out of five plaintiffs are Alabama residents who also will be inconvenienced even should defendants' motions to transfer be denied. It appears that this action was instituted in this Court solely for the convenience of the one resident plaintiff whose law firm is representing all the plaintiffs. Under these circumstances plaintiffs' choice of forum is to be accorded less weight than where the choice is premised on a more substantial connection between the forum district and the actual subject matter of the suit. *Cf. Rollings v. Moss,* [1982 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 98,869 (W.D.Pa.1982) (transfer granted where only one of five plaintiffs, who was also plaintiffs' attorney, resided in transferor district, there were only minimal contacts with that district, and other plaintiffs would be required to travel regardless of where suit was brought).

Plaintiffs' suggestion that if any transfer is made, it should be to the Northern District of Alabama, is not a reasonable solution to the problem of avoiding an inconvenient forum. Although this would presumably alleviate the inconvenience suffered by the four Alabama plaintiffs, such a transfer would not address any of the other relevant concerns raised by defendants which indicate that the Central District of California would be a substantially more convenient forum for this litigation.

Third, nearly all of the potentially relevant documentary evidence in this action is in California, where defendant Myriad's books and records are located and the individual defendants reside. If this case is litigated in this district, these documents will have to be duplicated, transported to Georgia, and stored here. If the action is transferred to California, however, "these inconveniences and any consequent disruption of defendants' business operations"

will be avoided. *Scheinbart v. Certain-Teed Products Corp.,* 367 F.Supp. 707, 710 (S.D.N.Y.1973). Furthermore, "[i]n a complex matter where numerous objections may arise during the course of discovery, the ability of the trial judge, sitting within the district where the original documents are located, to dispose promptly of such questions will serve enormously to expedite the case." *Blender, supra,* 396 F.Supp. at 304.

Fourth, the conduct challenged by plaintiffs in this action was largely "conceived, executed, and performed" in California. Although plaintiffs received copies of defendants' offering circular in Alabama and Georgia, the circular was written in California or came from sources in California, and most other copies of the circular were sent to prospective offerees in California. Also, defendant Myriad, although incorporated in Nevada, maintains its corporate offices in California, and potentially relevant mailings to and from the company used its California address.

Fifth, although not relevant to the question whether venue is proper, defendants' lack of any contact with this district, except that initiated by plaintiff Schreeder himself, *is* pertinent to determining the "center of gravity" of the action for purposes of a motion to transfer. Clearly, defendants' few attenuated and indirect contacts with this district cannot outweigh the substantial connection of all defendants and the transactions underlying this action with the Central District of California.

Finally, it is in the interest of justice, as well as judicial economy, that all of plaintiffs' claims be tried in a single forum. Since the Court has determined that venue is not proper in this district as to plaintiffs' RICO claims, these claims would have to be severed and tried separately in another forum if the remainder of plaintiffs' complaint is allowed to remain with this Court. A transfer of the entire case to California would avoid this piecemeal litigation. Since venue is clearly proper in California with respect both to RICO and plaintiffs' other claims, the district court there could

hear and determine the merits of plaintiffs' entire complaint.

For all the reasons stated above, the Court concludes that defendants have met their burden of showing that the circumstances of this case strongly favor a transfer to the Central District of California. Their alternative motions to transfer this action are accordingly GRANTED.

## IV. *Summary*

In sum, defendants' motions to dismiss this action for lack of personal jurisdiction and improper venue are DENIED, but their alternative motions to transfer this action to the Central District of California are GRANTED. Accordingly, the Clerk is DIRECTED to transmit the entire file in this case to the Clerk of the United States District Court for the Central District of California for assignment to an appropriate judge of that Court.